1 | PETE AIELLO

2 | 12 Verbena Court

3 | Oakley, CA

4 | 925-584-5550





**FILED**

OCT 1 9 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

6 | UNITED STATES DISTRICT COURT

7 | NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

9 | IN THE MATTER OF: )
  | )
10 | PETE AIELLO  , ) Case # C 11-03655 RS
  | )
11 | PLANTIFF, ) **FIRST AMENDED**
12 | ) **COMPLAINT FOR FAILURE TO COMPLY**
13 | ) **WITH CCP 2924, DECLARATORY RELIEF,**
  | vs. ) **INTENTIONAL MISREPRESENTATIONS,**
  | ) **NEGLIGENT MISREPRESENTATIONS,**
14 | BAC HOME LOAN SERVICING, LP; ) **CONCEALMENT, CONSTRUCTIVE FRAUD**
15 | DEUTSCHE BANK NATIONAL TRUST ) **UNLAWFUL, UNFAIR AND FRAUDULENT**
16 | COMPANY; RECONTRUST COMPANY; ) **BUSINESS PRACTICES UNDER B&P 17200,**
17 | MERS AND AS ) **UNJUST ENRICHMENT AND REQUEST FOR**
18 | YET UNAMED DEFENDANTS ) **INJUNCTIVE RELIEF**
19 | )
  | )
20 | _____RESPONDENT._____ )
21 |

22 | Plaintiff is an individual residing in Contra Costa County, California, whose primary residence, which is located

23 | at 12 Verbena Court, Oakley, California (hereafter "Subject Property"), is the primary focus of this litigation.

24 | Plaintiff is ignorant of the true names and capacity of all of the defendants sued herein; and therefore, sues

25 | these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and

26 | capacities when ascertained.

1 The use of the term "Defendants" in any of the allegations in this Complaint, unless specifically otherwise set
2 forth, is intended to include and charge both jointly and severely, not only named Defendants, but all
3 Defendants designated as well.

4 Any applicable statutes of limitations have been tolled by the Defendants' continuing, knowing, and active
5 concealment of the facts alleged herein.  Despite exercising reasonable diligence, Plaintiff could not have
6 discovered, did not discover, and was prevented from discovering, the wrongdoing complained of herein.

7 In the alternative, Defendants should be estopped from relying on any statutes of limitations.  Defendants
8 have been under a continuing duty to disclose the true character, nature, and quality of their financial services
9 and debt collection practices.  Defendants owed Plaintiff an affirmative duty of full and fair disclosure, but
10 knowingly failed to honor and discharge such duty.

11 INTRODUCTION

12 This action arises because Defendants are attempting to foreclose on Plaintiff. The legal authority that
13 Defendants are claiming to have, which is the basis for their various collection actions including initiating non-
14 judicial foreclosure through the recordation of a notice of default, assigning beneficial interest in the loan and
15 setting trustee sales, is non-existent. The defendants have never had and do not now have the legal authority
16 to have initiated those actions as evidenced by the trust agreement that controls BCAP, LLC Trust 2007-AA3.
17 The trust does not contain the loan in question and therefore holds no authority over it. All of the actions that
18 were initiated under the express authority of the trust were without a valid legal basis and are void by law.

19 WHO IS THE BENEFICIARY?

20 BAC Home Loan Servicing is not the beneficiary, they are allegedly the Servicer. Recon Trust Company, NA is
21 not the beneficiary, they are the alleged Trustee. Deutsche Bank National Trust Company is not the beneficiary
22 and neither is MERS.

1 MERS

2 MERS cannot be the beneficiary to the loan. Pursuant to MERS' own website:
3 http://www.mersinc.org/Foreclosures/index.aspx

4 "FORECLOSURE & BANKRUPTCY

5 *MERS® System Membership Rule 8 prohibits Members from initiating foreclosure proceedings in the name*
6 *of Mortgage Electronic Registration Systems, Inc.* ("MERS"). Rule 8 provides the required guidelines that must
7 be followed when a mortgage in which MERS is the mortgagee will be foreclosed. Please click here to access
8 the Rules of Membership, and reference the Rule 8 requirements.

9 Rule 8 requires a Member to instruct one of its MERS Signing Officers (also referred to as MERS Certifying
10 Officers) to execute an assignment of the mortgage lien from MERS to the servicer or a third party selected by
11 the Member. *The assignment must be executed by the MERS Signing Officer prior to the initiation of the*
12 *foreclosure proceeding.* After executing the assignment, the Member must ensure that it is promptly sent for
13 recording in the local land records as required by Rule 8."

14 DEUTSCHE BANK NATIONAL TRUST COMPANY

15 Deutsche Bank cannot be the beneficiary for the loan in question. Deutsche Bank National Bank Company is
16 acting as the trustee for BCAP LLC Trust 2007-AA3 which is a REMIC trust that is governed by New York state
17 trust law. In summary (please see memorandum for extensive detail), the trust, pursuant to its governing
18 documents cannot exercise influence or own anything that is outside of the trust. The closing date for the
19 trust was May 31, 2007. The loan was allegedly assigned to the trust in February of 2010. That assignment was
20 and is ineffective and void as a matter of law. Even if that assignment was executed under valid authority, it
21 was assigned AFTER the closing date and so the assignment would still fail. The loan was never assigned to the
22 trust pursuant to the trust's governing documents and therefore Deutsche Bank National Trust Company
23 cannot be the beneficiary for the loan.

1 WHO IS THE SERVICER?

2 BAC Home Loans Servicing, LP. is alleging that they are the servicer. They don't ever mention where that
3 authority comes from. Plaintiff contends that since the servicers as listed on the trust agreement were both
4 Wells Fargo and Countrywide, that BAC is acting as the successor to Countrywide. The only problem with this
5 is that the loan in question is not part of the BCAP LLC Trust 2007-AA3, and so Countrywide could not be
6 successor in interest to rights that don't exist for this loan.

7 FIRST CAUSE OF ACTION FOR FAILURE TO COMPLY WITH CAL. CODE OF CIVIL PROCEDURE 2924(1)(C)

8 California Code of Civil Procedure 2924 states in part that "[w]here, by a mortgage created after July 27, 1917,
9 of any estate in real property...to secure the performance of an obligation, a power of sale is conferred upon
10 the mortgagee, trustee, or any other person, to be exercised after a breach of the obligation for which that
11 mortgage or transfer is a security, the power shall not be exercised...until all of the following apply:"

12 Subsection (1) states that "the trustee, mortgagee, or beneficiary, or any of their authorized agents shall first
13 file for record...a notice of default. That notice of default shall include all of the following:"

14 Subsection(1)(c) states the requirement that "A statement setting forth the nature of each breach *actually*
15 *known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that*
16 *obligation* and any other obligation secured by the deed of trust or mortgage that is in default.

17 The Notice of Default (hereafter "NOD") that was filed and recorded on January 7, 2010 lists Deutsche Bank
18 National Trust Company, as Trustee for BCAP LLC Trust 2007-AA3 as the beneficiary. The NOD was issued and
19 recorded under their alleged authority as beneficiary. Deutsche Bank was not and is not the beneficiary and so
20 the alleged statement that set forth the nature of each breach *actually known* to the beneficiary was
21 fraudulent and false. The beneficiary has never set forth a statement identifying any breaches nor have they
22 elected to sell the property. The NOD is defective because it is not in compliance with the statues that govern
23 non-judicial foreclosures in California. Plaintiff would suffer a prejudice if the NOD is not corrected as the

1 lawful beneficiary may initiate duplicate proceedings based on their lawful ownership of their actual beneficial

2 interests in the loan and cause waste for both the court of for the Plaintiff.

3 Based on the aforementioned, Plaintiff requests that the court declare that the NOD that was filed is not in

4 compliance with the statutes governing non-judicial foreclosure and is therefore ineffective as a means of

5 initiating non-judicial foreclosure.

6 SECOND CAUSE OF ACTION FOR DECLARATORY RELIEF

7 This is an action for declaratory relief which is brought pursuant to California Civil Procedure §1060, which

8 provides that "any person interested under a written instrument or a contract *who desires a declaration of his*

9 *rights or duties with respect to another or in respect to property may*, in the case of an actual controversy

10 relating to the legal rights and duties of the parties, bring an original action in the superior court for a

11 declaration of his rights or duties in the premises, *including a determination of any question of construction or*

12 *validity arising under the instrument or contract*, with the declaration having the force and effect of a final

13 judgment and which may be had before there has been any breach of the obligation in respect to which the

14 declaration is sought."

15 Plaintiff is an "interested person" within the meaning and intent of California Civil Procedure 1060. Plaintiff is

16 seeking a declaration of his rights and obligations as they relate to Defendants; whether or not payments have

17 to be made to them, do they have the right to foreclose, etc.... Plaintiff is also allegedly a third party

18 beneficiary to the trust agreement that governs BCAP LLC Trust 2007-AA3. A third party beneficiary does not

19 need to be named or be an exclusive beneficiary of the contract in question. See *Outdoor Servs., Inc. v.*

20 *Pabagold, Inc. (1986) 185 CA3d 676, 681-684, 230 CR 73; Harper v. Wausau Ins. Co. (1997) 56 CA4th 1079,*

21 *1086, 66 CR2d 64 ; COAC, Inc. v. Kennedy Eng'rs (1977) 67 CA3d 916, 920, 136 CR 890.* Plaintiff is an alleged

22 third party beneficiary because the interpretation of trust agreement governs Plaintiff's relationships with the

23 defendants. See *Outdoor Servs., Inc. v. Pabagold, Inc. (1986) 185 CA3d 676, 681-684, 230 CR 73.*

1 There is an actual controversy in that Defendants are claiming to have gained rights under the terms of the
2 trust agreement that Plaintiff contends that they do not have; specifically, Deutsche Bank contends that it is
3 the beneficiary of the loan and BAC Home Loan Servicing contends that it is the servicer of the loan and
4 Plaintiff contends that neither party has any rights to the loan whatsoever.

5 An essential element of a cause of action for declaratory relief is that the parties have "rights or duties" with
6 respect to property and the existence of an actual and present controversy must be pleaded specifically."
7 *Alturas v. Gloster, 16 Cal.2d 46, 48 (1940)*. An actual controversy involving justiciable questions relating to the
8 rights or obligations of a party must exist. See *Tiburon v. Northwestern Pacific Railroad Co., 4 Cal.App.3d*
9 *160,170 (1970); see also, Aetna Life Insurance Company v. Haworth, 300 U.S. 227, 240-241 (1937); Conroy v.*
10 *Civil Service Commission, 75 Cal. App.2d 450, 456 (1946).* It is axiomatic that a cause of action for declaratory
11 relief serves the purpose of adjudicating future rights and liabilities between parties. See *Cardellini v. Casey,*
12 *181 Cal.App.3d 389 (1986); Bachis v. State Farm Mutual Auto Ins. Co., 265 Cal.App.2d 722 (1968).*

13 The 'rights and obligations' to collect payments and to initiate foreclosure on Plaintiff's property (his home),
14 are being claimed by Defendants. Plaintiff contends that Defendants hold neither of these rights. There is an
15 actual controversy here as Defendants are claiming that they have certain aforementioned rights and Plaintiff
16 is claiming that they don't. Each party has interpreted the contract (here the trust agreement) differently, and
17 so now Plaintiff comes before the court to get a determination as to the rights and duties and interpretation
18 of the contract in question; here the trust agreement. This controversy will affect future actions as it will
19 determine whether or not Defendants had or have the authority to act as the beneficiary or the servicer of the
20 loan in question. It will govern the foreclosure proceedings that are occurring concurrently with this action as
21 well as the disposition of any future payments that are made to the lawful servicer and the lawful beneficiary.
22 The declaration will in fact guide every future action between Plaintiff and Defendants.

23 All of the documents that have been recorded to facilitate the foreclosure action have been initiated with false
24 authority. All of the documents have been created and filed and recorded based on the authority of Deutsche

1  Bank as the beneficiary, the authority which they allege is derived from their role as trustee for BCAP LLC Trust

2  2007-AA3. As detailed in the memorandum, Deutsche Bank is not the beneficiary and cannot ever be the

3  beneficiary. BAC Home Loan Servicing is alleging that they are the servicer for the loan in question. It is unclear

4  where their alleged authority comes from, but Plaintiff contends that they are not the lawful servicer.

5  WHEREFORE, Plaintiff requests that this Court take jurisdiction of this claim and issue an Order and Decree

6  that:

7     a) The Plaintiff's mortgage loan is not a part of BCAP LLC Trust 2007-AA3 now and never has been.

8     b) Deutsche Bank National Trust Company is not and has never been and cannot ever be the beneficiary

9        of the loan in question.

10    c) BAC Home Loan Servicing is not and has never been the servicer of the loan in question.

11    d) MERS is not the beneficiary of the loan in question.

12 THIRD CAUSE OF ACTION FOR INTENTIONAL MISREPRESENTATION

13 Deutsche Bank has through its agents who are unknown without discovery, knowingly and willfully and with

14 malice since January 2010 and repeatedly thereafter, been fraudulently making statements that they are the

15 lawful beneficiary. These statements are false. Deutsche Bank is not the lawful beneficiary. BAC Home Loan

16 Servicing has through its agents who are unknown without discovery, knowingly and willfully and with malice

17 since 2008 and repeatedly thereafter, been making fraudulent statements that they are the lawful servicer of

18 the Plaintiff's loan. These statements are false. BAC Home Loan Servicing is not the lawful servicer.

19 These misrepresentations are evidenced by the various statements and correspondences that Defendants

20 have sent to Plaintiff and that those Defendants have recorded in the public record. Every time BAC sent or

21 called Plaintiff with a request for payment, they were misrepresenting the rights that they had to Plaintiff's

22 loan. When Deutsche caused a NOD and Notice of Trustee's sale to be filed in the public record it was an

23 intentional misrepresentation.

1 Defendant's executives and managers knowingly acted with malice and fraud when making the intentional
2 misrepresentations. The executives of both companies had knowledge that the trust vehicles were defective.
3 They knew that telling consumers to pay them for assets that they had no legal right to would cause harm to
4 the Plaintiffs and they did make these statements with a willful and conscious disregard of the rights of others.
5 A simple examination of the governing contracts would have shown them that they weren't the beneficiary or
6 the servicer. Deutsche Bank's executives made fraudulent statements that they were the lawful beneficiary of
7 Plaintiff's mortgage so that they could foreclose on Plaintiffs home at Plaintiff's expense. BAC Home Loan
8 Servicing made fraudulent statements that they were the lawful servicer so that Plaintiff would send them
9 money every month at Plaintiff's expense.

10 Plaintiff does not know and could not know the names of the agents of Defendant's who wrote the letters and
11 made the calls to Plaintiff or the names of the executives that were involved in the trust agreements and the
12 surrounding issues, and whose representations, as agents of Defendant's, are the foundation for this cause of
13 action. Defendants are fully possessed of that information, as it is located within their phone records and
14 staffing records, and so the specificity requirements for pleading a fraud cause of action are relaxed. "We
15 acknowledge that the requirement of specificity is relaxed when the allegations indicate that "the defendant
16 must necessarily possess full information concerning the facts of the controversy" *Bradley v. Hartford Acc. &*
17 *Indem. Co. (1973) 30 Cal.App.3d. 818, 825* "or when the facts lie more in knowledge of the opposite party."
18 See *Turner v. Milstein (1951) 103 Cal.App.2d 651, 658.* In this instant action, Defendants are possessed of the
19 specific names of their agents who made the statements and mailings that Plaintiff is basing his action on.

20 Defendants intended Plaintiff to rely on Defendant's representations that they were the lawful servicer and
21 beneficiary of the loan in question. They intended that Plaintiff send his payments to them every month as if
22 they were the lawful servicer and they intended for Plaintiff to go along with the non-judicial foreclosure that
23 they initiated willingly.

1 Plaintiff's reliance on Defendant's statements was reasonable because they are large banks and the power
2 between the two parties is inherently unbalanced. Any reasonable person would assume that if a large bank
3 states that they own your loan and you owe them money; that you actually do. This however, was and is not
4 the case.

5 Plaintiff suffered damages from the fraudulent statements of Defendants. The payments that were sent to
6 BAC Home Loan Servicing were legally the property of another party. Plaintiff has been deprived of those
7 payments through fraudulent statements. Payments were collected from Plaintiff under the false pretense
8 that BAC had the legal rights (Servicing Rights) to collect the payments for the mortgage. Deutsche Bank knew
9 that they were not the lawful owner of the loan in question. The lawful beneficiary may come to Plaintiff at a
10 point in the future to collect those payments that they are obligated to. Plaintiff now has an outstanding legal
11 liability of approximately $100,000 to the lawful beneficiary and the lawful servicer due to the statements
12 made by Chase.

13 If Defendants had not represented that they were the lawful beneficiary and servicer of the loan in question
14 than Plaintiff would not have sent them his money and would not currently be exposed to the legal liability of
15 owing payments to the lawful beneficiary and servicer.

16 FOURTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION

17 Deutsche Bank has through its agents who are unknown without discovery, knowingly and willfully since
18 January 2010 and repeatedly thereafter, been fraudulently making statements that they are the lawful
19 beneficiary of the loan in question. These statements are false. Deutsche Bank is not the lawful beneficiary.
20 BAC Home Loan Servicing has through its agents who are unknown without discovery, been making fraudulent
21 statements that it is the lawful servicer of the loan in question. BAC is not the lawful servicer.

22 Neither Defendant has a reasonable basis to believe that they were the lawful beneficiary or the lawful
23 servicer of the loan in question. The trust agreement is in black and white and publicly accessible on the SEC's

1 website. Furthermore, large companies should make a practice of verifying that they own something before
2 they try to take it from someone. Defendants had a duty to disclose that they were not the legal beneficiaries
3 or servicers of the loan in question. They are in a superior position in terms of expertise and knowledge of the
4 situation surrounding the ownership of the loan in question and owed an equitable duty to inform Plaintiff
5 CORRECTLY of their ownership interests in the Plaintiff's loan. Defendants were acting in a commercial setting
6 for a business purpose. BAC was and is attempting to collect payments and conduct business as the servicer of
7 the loan. Deutsche Bank was and is attempting to foreclose on the property and is acting as the beneficiary of
8 the loan in question. Defendants intended that Plaintiff would rely on their misrepresentations. They made
9 these representations in an attempt to get money from Plaintiff, either monthly through payments or through
10 the foreclosure sale. Plaintiff's reliance was justifiable as an average person would assume that a large bank
11 with more knowledge and expertise of the ownership of loans would correctly inform consumers as to
12 whether or not they actually owned the loans in question and whether or not they actually had any operative
13 rights to them. Plaintiff suffered damages as he is now exposed to a liability from the lawful beneficiary and
14 the lawful servicer who are still legally entitled to Plaintiff's payments, despite the fact that Defendants took
15 them fraudulently. There is a combined exposure of over $100,000 at this point. Defendant's conduct was the
16 major contributing factor that caused Plaintiff's damages. Plaintiff would not have sent the payments to BAC if
17 BAC had not made fraudulent statements that they were entitled to them and that they were the lawful
18 servicer of the loan in question.

19 FIFTH CAUSE OF ACTION FOR CONCEALMENT

20 Deutsche Bank's executives, managers and other agents concealed that it was not the lawful beneficiary. BAC
21 Home Loan Servicing's executives, managers and other agents concealed that they were not the lawful
22 servicer of the loan in question. The defendants concealed these facts with the intent to defraud the victim.
23 BAC intended to collect payments that is has no right to and Deutsche Bank intended to foreclose on the
24 property when they had no right to. Both of the above actions would and have occurred at Plaintiff's expense.

1  Defendants had a duty to disclose that they were not the lawful beneficiary or the lawful servicer of the loan.
2  Deutsche Bank made representations that they had were the beneficiary of the loan under the terms of the
3  trust agreement. BAC represented that they were the lawful servicer based on an unknown authority. Even if a
4  fiduciary relationship is not involved, a claim for fraud by concealment still arises if defendant makes
5  representations, but fails to disclose additional facts that qualify the facts already disclosed or that render the
6  disclosure misleading by their absence. See *Roddenberry v. Roddenberry (1996) 44 CA4th 634, 666, 51 CR2d*
7  *907.* Defendants failed to disclose that they were not the lawful servicers or beneficiaries pursuant to the
8  terms of the trust agreement.

9  Speaking triggers the duty to disclose. The duty to disclose occurs when one undertakes to speak. The speaker
10  must not only tell the truth, but also must not withhold or conceal facts within his or her knowledge that
11  would materially qualify the statements already made. In other words, one who speaks must make a full
12  disclosure. See *Warner Constr. Corp. v. City of Los Angeles (1970) 2 C3d 285, 294, 85 CR 444, 466 P2d 996;*
13  *Brownlee v. Vang (1965) 235 CA2d 465, 477, 45 CR 458* Defendants did not make a full disclosure. They
14  withheld and concealed the fact that the trust agreement dictated that they had no legal or operative rights to
15  the loan in question.

16  Plaintiff was unaware until recently that a trust agreement governed the rights of the Defendants. Plaintiff
17  was also unaware that the terms of the trust agreement rendered Deutsche Bank and BAC neither the
18  beneficiary nor the servicer of his loan. Plaintiff would not have sent payments to BAC or had foreclosure
19  initiated by Deutsche Bank if Defendants had not concealed the facts surrounding the trust agreement.

20  Plaintiff suffered damages as a result of Defendant's concealment. Plaintiff is now exposed to liability to the
21  lawful beneficiary and the lawful servicer. Plaintiff is legally required to pay the lawful beneficiary and the
22  lawful servicer for the loan that is on his property. Plaintiff would not be exposed to this liability of over
23  $100,000 if Defendant had not concealed the aforementioned facts.

1 | SIXTH CAUSE OF ACTION FOR CONSTRUCTIVE FRAUD

2 | California Civil Code §1573 provides that constructive fraud consists of: "Any breach of duty which, without an
3 | actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by
4 | misleading another to his prejudice, or to the prejudice of any one claiming under him."

5 | "Constructive fraud consists of acts, omissions, and concealments involving a breach of a legal *or equitable*
6 | *duty, trust, or confidence, resulting in damage to another." Barrett v. Bank of Am. (1986) 183 CA3d 1362,*
7 | *1368-1369, 229 CR 16.* "Constructive fraud exists if there is a breach of duty arising from a confidential
8 | relationship—that is, *a relationship in which the trust and confidence of one person is placed in the integrity of*
9 | *another." Warren v. Merrill (2006) 143 CA4th 96, 109-110, 49 CR3d 122; Barrett v. Bank of Am. (1986) 183*
10 | *CA3d 1362, 1368-1369, 229 CR 16; Salahutdin v. Valley of Cal., Inc. (1994) 24 CA4th 555, 562, 29 CR2d 463;*
11 | *Twomey v. Mitchum, Jones and Templeton, Inc. (1968) 262 CA2d 690, 711, 69 CR 222.*

12 | Plaintiff suffered a prejudice and damages as a result of Defendant's breaches of duty, trust and confidence in
13 | that Plaintiff is now exposed to $100,000 worth of missed payments that are due to the lawful beneficiary and
14 | the lawful servicer. Without Defendant's fraudulent statements and representations as evidenced by the
15 | judicially noticed communications, Plaintiff would have never sent those payments to BAC.

16 | Defendants had a relationship of trust, duty and confidence with Plaintiff. Plaintiff had placed his confidence
17 | and trust in Defendants. Plaintiff relied on Defendants statements because of the imbalance of knowledge and
18 | expertise surrounding the ownership of Plaintiff's loan. Deutsche Bank is a bank that routinely buys and sells
19 | mortgages and Plaintiff is a consumer who is unskilled in these sorts of matters. BAC is a nationwide servicing
20 | company that routinely services hundreds of thousands of mortgages.

21 | Defendants owed Plaintiff a duty to accurately state whether or not they were the lawful beneficiary or the
22 | lawful servicer of Plaintiff's loan. Deutsche Bank owed Plaintiff a duty to not initiate foreclosure on his

1 | property without checking to see if they had the legal right to do so. BAC owed Plaintiff a duty to see whether

2 | or not they were entitled to his payments every month.

3 | A breach of care is a breach of duty.

4 | Civil Code §1714(a) provides that "everyone is responsible, not only for the result of his or her willful acts, but

5 | also for an injury occasioned to another by his or her want of ordinary care of skill of management of his or

6 | her property or person…"

7 | The California Supreme Court has held that the section (1714) embodies a fundamental principle of liability for

8 | failure to exercise such care, and that "it is clear that in the absence of statutory provision declaring an

9 | exception to the fundamental principle enunciated by Civil Code §1714, no such exception should be made

10 | unless clearly supported by public policy." *Footnote 12.1 Civ. Code §1714(a)*

11 | The California Supreme Court has also adopted Prosser's definition of duty as "an expression of the sum total

12 | of those considerations of policy which lead the law to say that the particular [defendant] is entitled to

13 | protection." The Court "has repeatedly eschewed overly rigid common law formulations of duty…" Specific

14 | duties are thus determined on a case-by-case analysis.

15 | In Rowland v. Christian, the California Supreme Court observed that the general rule in California, as codified

16 | in Civil Code 1714, is that every person is liable for injuries caused by his or her failure to exercise reasonable

17 | care under the circumstances. The court then identified a number of factors that courts should consider to

18 | determine whether or not an exception to the general duty to exercise ordinary care should be made in a

19 | particular case.

20 | The considerations for establishing a legal duty are:

21 |     -  the foreseeability of harm to the injured party;

22 |     -  the degree of certainty he or she suffered injury;

1    -   the closeness of the connection between the defendant's conduct and the injury suffered;

2    -   the moral blame attached to the defendant's conduct;

3    -   the policy of preventing future harm;

4    -   the extent of the burden to the defendant and the consequences to the community of imposing a duty

5        of care with resulting liability for breach;

6    -   and the availability, cost, and prevalence of insurance for the risk involved; and,

7    -   the social utility of the defendant's conduct from which the injury arose

8    Deutsche Bank did not and has not ever checked to see whether they are in fact the lawful beneficiary of

9    the loan in question. BAC has not ever checked to see if they are the lawful servicer of the loan.

10   Based on Defendant's decades of experience in commercial matters related to mortgages (including the

11   buying, selling, servicing, etc... of said mortgages) it is reasonable that Defendants should have foreseen harm

12   from their treating the loan as if they had rights to it when they didn't. BAC knew that taking someone's

13   payments when they weren't entitle to it would cause harm and Deutsche Bank knew that foreclosing on an

14   asset that wasn't theirs would cause harm. *"If harm has been done, the problem is more complex, and might*

15   *be addressed by asking which of the parties is more efficiently situated to have prevented or insured against*

16   *that harm."* (Posner and Rosenfield, 1977, p. 83). p803. It is reasonably foreseeable that a bank that doesn't

17   check to see if it owns a loan or has any rights to it, and that collects payments and performs other servicing

18   and beneficiary related activities, would cause harm to someone. They would be acting as if they own

19   something that they don't. They did not bother to research this issue before taking Plaintiff's money and

20   trying to take his home.

21   Injury is defined as, "wrongdoing that violates another's rights and is unjustly inflicted." It is certain that

22   Plaintiff suffered injury by sending money to BAC based on BAC's fraudulent statements and representations.

23   That BAC took the Plaintiffs money was a wrongdoing as BAC did not have any rights to it and BAC did it

1 unjustly under the pretense that they were the legal holder of the appropriate rights. Defendants have injured

2 Plaintiff by exposing him to a $100,000 liability to the lawful beneficiary and the lawful servicer of the loan.

3 In society we are expected to be responsible regarding transactions that affect people other than ourselves. It

4 is morally unacceptable to collect people's money under a false statement of legal rights or associations. It is

5 morally unacceptable to not actually CHECK to see if you own something before you start to assert legal rights

6 that have serious financial consequences for those involved. Defendants told Plaintiff that they were the legal

7 beneficiary and servicer and that was not true. They never bothered to check on what their true legal status

8 was, instead just assuming the roles that were most profitable to them at the time and hoping that no one

9 noticed.

10 In our society we want our business transactions to have foreseeable consequences. This helps everyone to

11 mitigate the risk inherent in any transaction. If we allowed people or businesses to run around acting as if they

12 owned or were entitled to something when they were not, there would be chaos in the business world. It is

13 vital that the court not allow this in order to further the future good of society. It would prevent future harm if

14 anyone who wished to collect payments or foreclose on a property was required to CHECK to see if they had

15 the legal right to DO it before they do it.

16 The burden to the defendant would not be that great were they to be found to have breached their duty of

17 care. Deutsche Bank and BAC are both enormous and profitable companies. Bank of America, BAC's parent,

18 just posted a $4.5 billion dollar profit for the QUARTER and is the second largest bank in the world. The cost to

19 perform a CHECK to see what their actual legal status is BEFORE exercising rights that include the taking of

20 money or the taking of property would be minimal. The cost to wait until someone actually and legally has

21 rights to something, before allowing them to exercise rights over it would be small. It will cost Defendants

22 some money, but that does not constitute a burden. Any burden would be far outweighed by the great

23 reduction in waste that would occur. If banks had to check on the legal status of assets before they asserted

24 rights over them, then there would be fewer court cases like this one and the many others that assert that a

1 bank does not really own what they say they own or are not possessed of rights that they are claiming they
2 are. If banks were NOT required to check the status of rights pertaining to assets that they are attempting to
3 collect on or exert influence on, then many consumers and businesses will be harmed because the Bank may
4 be incorrect about its ASSUMPTIONS regarding the asset in question.

5 With regard to the availability, cost and prevalence of insurance for a situation such as this, Plaintiff, upon
6 belief states that errors and omissions insurance of some kind would cover when a bank mistakenly thinks that
7 it owns something when it doesn't really.

8 *"The parties parted with their goods or services on assumptions that have proved to be invalid. If the court*
9 *were to simply leave the parties where it finds them, the parties would have incentives to strategically and*
10 *uneconomically delay the transfer of physical possession of resources involved in the contracting process."*
11 (Bouckaert and De Geest, 1995, p. 475). p803

12 There is no social utility to allowing any party, much less one of the largest businesses in the world, to operate
13 AS IF an agreement it was party to HAD actually conveyed rights. What is the social utility of allowing one of
14 the largest and most profitable businesses to operate outside the terms of the law on a transaction with a
15 scope larger than the GDP of many small nations? Millions of people were negatively affected as a result of
16 this transaction and will continue to be affected. There is no social utility in allowing this.

17 As further evidence of the lack of social utility, so-called "squatter's rent," or the increase to income from
18 withheld mortgage payments, will be an estimated $50 billion this year, according to Michael Feroli, chief U.S.
19 economist at JPMorgan Chase & Co. in New York. *"We've had a lot of government transfers to the household*
20 *sector; this is a transfer from the business sector to households,"* Feroli said. "*It's a shock absorber that has*
21 *helped the consumer ride out the storm."* "Delinquencies and defaults have helped homeowners save more,
22 pay down other debts and move on to more affordable homes", according to Stan Humphries, chief economist
23 at Zillow Inc., a Seattle-based provider of housing data. "Owners in default need the savings because degraded

1 credit scores from the default make it more difficult to borrow", he said. Fewer people would have lost their

2 homes and the economy would be stronger if banks had to take their time with things.

3 In short, public policy does not favor a broad based waiver of duty for ALL of the actions that banks take part

4 in. To address the supposedly landmark Nymark v. Heart case that the bank's attorneys are so fond of pointing

5 to as providing for an absence of duty for every action done by the bank: *"[The Court of Appeal] held that the*

6 *lending institution, acting within the scope of its conventional activities as a lender of money, owed no duty*

7 *of care to the borrower IN PREPARING AN APPRAISAL of the security of the loan, since the purpose of the*

8 *appraisal was to protect the lender, not the borrower."* Nymark v. Heart. THIS IS NOT A BROAD WAIVER OF

9 DUTY FOR EVERY ACTION THE BANK TAKES. Duty is to be evaluated based on the guidelines listed above,

10 pursuant to the California Supreme Court, and on a CASE BY CASE basis.

11 SEVENTH, EIGHTH AND NINTH CAUSES OF ACTION FOR UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS

12 PRACTICES UNDER B&P CODE §17200

13 California Business & Professions Code Section 17200, et seq., prohibits acts of unfair competition. "Unfair

14 competition shall mean and include any unlawful, unfair or fraudulent business act or practice..."

15 UNFAIR

16 The California Supreme Court has adopted two definitions of 'unfair' business practices. The first accepted

17 definition is "that an 'unfair' business practice occurs when that practice offends an established public policy

18 or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."

19 Whether a business act or practice met this definition of unfair was usually determined by applying some form

20 of a cost-benefit analysis to a particular situation—balancing "the utility of the defendant's conduct against

21 the gravity of the harm to the alleged victim." The second accepted definition is that an unfair business

22 practice should be "tethered to some legislatively declared policy *or proof of some actual or threatened*

23 *impact on competition." See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*

1 Defendants have broadly declared themselves as the beneficiary and servicer for all of the loans covered
2 under the trust agreement. Defendants are not the servicer and beneficiary for these loans.

3 It offends public policy for Defendants to broadly declare that they are the beneficiary and servicer for all of
4 these loans when they are not. It is injurious to consumers, such as Plaintiff, because not only are the
5 consumers being deprived of their monies based on falsities, but the consumers are now liable to the lawful
6 servicers and the lawful beneficiaries for the payments that were sent to Defendants instead. It threatens
7 competition to have Defendants declaring and acting as if they are the legal servicers and beneficiaries
8 because not only are the lawful beneficiaries and servicers deprived of their rightfully due payments, but the
9 other banks that compete with Defendants do not get to collect money from acting as the beneficiaries and
10 servicers of loans that they don't have the rights to (hopefully anyway) and so Defendants have an unfair
11 advantage in the marketplace. Let us also not forget what will happen to the title of these properties once
12 these competing claims come forward.

13 FRAUD

14 The California Supreme Court has long held that the 'fraudulent' prong of 17200 merely requires a showing
15 that "members of the public are likely to be deceived."

16 Defendants have declared themselves the lawful beneficiary and lawful servicer for all loans that covered by
17 the trust agreement. This statement is untrue and the public is likely to be misled by it. The public relies on the
18 statements of Defendants because they have more knowledge and expertise regarding the lawful beneficial
19 interests and servicing rights associated with mortgage loans. The public is likely to be misled by Defendant's
20 blanket statements of ownership that are untrue. The public is likely to believe that Defendants are the lawful
21 beneficiary and the lawful servicer for these loans and will be harmed by it. Plaintiff relied on Defendants
22 aforementioned fraudulent statements and has been harmed by his reliance on Defendants fraudulent
23 statements in that he has been exposed to a massive liability to the true beneficiary and the true servicer and
24 has been deprived of his property.

1 UNLAWFUL

2 Plaintiff reincorporates each and every cause of action here as the basis for the unlawful prong claim being
3 brought under B&P Code §17200.

4 Plaintiff and others like him have been injured by Defendant's violation of the above incorporated laws as
5 detailed throughout the complaint.

6 IN SUMMARY

7 Defendants have been unjustly enriched and should be required to disgorge their illicit profits and make
8 restitution to Plaintiffs and other California consumers who have been harmed, and be enjoined from
9 continuing in such practices pursuant to California Business & Professions Code Sections 17203 and 17204.
10 Additionally, Plaintiffs are therefore entitled to injunctive relief and attorney's fees as available under
11 California Business and Professions Code Sec. 17200 and related.

12 TENTH CAUSE OF ACTION FOR UNJUST ENRICHMENT OR QUASI-CONTRACT

13 Plaintiff has to date made approximately $100,000 worth of payments to BAC. All of these payments were
14 conveyed to BAC based on aforementioned false, negligent and fraudulent statements and representations
15 made by BAC pertaining to their alleged rights to the loan.

16 BAC is not possessed of any rights that would have entitled them to receive money from Plaintiff in the form
17 of payments. It is unjust that they received the payments because they never had any right to receive them in
18 the first place.

19 Because BAC is not the lawful servicer of the loan in question, they are not entitled to retain Plaintiff's
20 payments at his expense. There is both a legal and equitable basis for Plaintiff to receive the funds back.
21 Plaintiff is entitled to receive, as restitution, all of the monies that BAC has received unjustly back and with
22 interest.

23 REQUEST FOR INJUNCTIVE RELIEF

1  As set forth above, Plaintiff has been threatened with foreclosure of his Property, which Property is unique

2  and is Plaintiff's primary residence. California Civil Procedure 526(a)(1) provides that an injunction may be

3  granted when it appears by the complaint that the plaintiff is entitled to the relief demanded and the relief, or

4  any part thereof, consists in restraining the commission or continuance of the act complained of, either for a

5  limited period or perpetually. Plaintiff is entitled to the relief demanded in this Complaint including the

6  restraining and enjoining of the continuance of any foreclosure proceedings, reporting to credit, the further

7  demand for payments and any other collection, servicing or other activity which would require beneficial or

8  servicing interest in the Plaintiff's loan to conduct; including but not limited to the conducting of any Trustee's

9  Sale of his Property.

10  Plaintiff is likely to prevail on the merits of this case as the evidence presented weighs in favor of the Plaintiff.

11  The trust agreement shows that Defendants are not and could not be the beneficiary or the servicer to the

12  loan.

13  The parties seeking to foreclose have failed to demonstrate that they have the legal right to do so at this point

14  and are in violation of the CCP sections that govern non-judicial foreclosure actions. The foreclosure has been

15  initiated by Deutsche Bank under their fraudulent authority as the beneficiary of the loan. They have instituted

16  the foreclosure through fraudulent and false misrepresentations.

17  Subsection (a)(2) of the California Civil Procedure 526 provides that an injunction may be granted when it

18  appears by the Complaint or affidavits that the commission or continuance of some act during the litigation

19  would produce waste, or great or irreparable injury, to a party to the action.

20  Subsection (a)(3) of California Civil Procedure 526 provides that an injunction may be granted when it appears,

21  during the litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring or

22  suffering to be done, some act in violation of the rights of another party to the action respecting the subject of

23  the action, and tending to render the judgment ineffectual.

This litigation has been filed prior to the threatened Trustee's Sale, and as such, if the Trustee's Sale progresses during the pendency of this litigation, this is an act which is in violation of the rights of the Plaintiff respecting the Property, which is the subject of this action, and which act would render any judgment in this case ineffectual.

Subsection (a)(4) of California Civil Procedure 526 provides that an injunction may be granted when pecuniary compensation would not afford adequate relief. The Property, which is the subject of this action in unique. As such, an injunction is necessary as pecuniary compensation would not afford adequate relief. As set forth above, Plaintiff will suffer irreparable harm consisting of the loss of his unique and valuable residential real estate should the relief requested herein not be granted, for which there is no adequate remedy at law.

As Defendants have not and cannot demonstrate any harm, damages, or impairment of any interest with the granting of the requested relief (as Defendants have no demonstrated interest in the loan as either servicer or beneficiary and have instituted a fraudulent foreclosure), no bond should be required of Plaintiff as a prerequisite to this Court's granting of the relief requested herein.

WHEREFORE, Plaintiff requests that this Court issue a Preliminary Injunction enjoining any foreclosure efforts or other collection or servicing activity pending the full disposition of this action on the merits and for permanent injunctive relief, should Plaintiff prevail on the merits, forever precluding Defendants from continuing with any threats or actions relating to foreclosure, collection, servicing and any other activity which requires beneficial interest in the loan to enact; with Plaintiff requesting such relief for the reasons set forth and with a request for any other and further relief which is just and proper.

## PRAYER FOR RELIEF

1. Wherefore, Plaintiff prays for judgment against the Defendants and each of them, jointly and severally, as follows:
2. For a declaration of the rights and duties of the parties as stated above.
3. For compensatory, special, general and punitive damages according to proof against all Defendants.

1    4. Pursuant to Business and Professions Code § 17203, that all Defendants, their successors, agents,

2        representatives, employees, and all persons who act in concert with them be permanently enjoined

3        from committing any acts of unfair competition in violation of the CLRA and § 17200, including, but not

4        limited to, the violations alleged herein.

5    5. For civil penalties pursuant to statute, restitution, injunctive relief and reasonable attorney's fees

6        according to proof.

7    6. For reasonable attorney's fees and costs.

8    7. For reasonable costs of suit and such other and further relief as the Court deems proper.

9

10   DATED: October 18, 2011

11                                                    _Pete Aiello_

12                                                             PETE AIELLO